# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2268

_____

United States of America,

        Appellee,

v.

Miguel Delgado-Hernandez,

        Appellant.

\* 
\* 
\* 
\*   Appeal from the United States
\*   District Court for the
\*   District of Nebraska.
\* 
\*     [PUBLISHED]
\*

_____

Submitted: February 15, 2011
Filed: July 20, 2011

_____

Before SMITH, GRUENDER, and BENTON, Circuit Judges.

_____

PER CURIAM.

Miguel Delgado-Hernandez pleaded guilty to one count of being an alien found in the United States following a prior removal, in violation of 18 U.S.C. § 1326(a) and (b)(2). The district court[1] sentenced him to 77 months' imprisonment. On appeal, Delgado-Hernandez argues that the district court procedurally erred in calculating his criminal history under the Sentencing Guidelines and imposed a substantively unreasonable sentence. For the following reasons, we affirm.

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

I. *Background*

On January 7, 2010, Nebraska authorities arrested Delgado-Hernandez for driving with a suspended license. While jailed in Lincoln, Nebraska, he admitted to being a citizen and national of Mexico and an alien unlawfully present in the United States.

On January 11, 2010, Immigration and Customs Enforcement (ICE) took Delgado-Hernandez into custody. Department of Homeland Security (DHS) records revealed that Delgado-Hernandez had been ordered removed from the United States to Mexico on September 27, 2000. These records also showed that Delgado-Hernandez never sought nor received permission from the United States Attorney General or DHS to reenter the United States. Federal Bureau of Investigation (FBI) databases revealed that, on May 31, 1994, Delgado-Hernandez was convicted of assault with a deadly weapon and residential burglary in California state court and sentenced to two years' imprisonment on each charge.

Delgado-Hernandez pleaded guilty to one count of being an alien found in the United States after having been removed following a conviction for an aggravated felony (the California assault and burglary), in violation of 8 U.S.C. § 1326(a) and (b)(2). The presentence investigation report (PSR) computed a total offense level of 21, incorporating a base offense level of 8, a 16-level enhancement for being removed after a prior conviction for a crime of violence (the California assault and burglary), and a three-level reduction for acceptance of responsibility. Delgado-Hernandez did not raise any objections to the PSR's calculation of his total offense level.

Pursuant to U.S.S.G. § 4A1.2(e), the PSR used July 29, 2001, the date of his return to the United States, as the date the instant offense commenced. The PSR scored 15 criminal history points for nine of Delgado-Hernandez's prior convictions. Specifically, the PSR scored (1) one point for an August 20, 1991 conviction for petty theft; (2) two points for a September 6, 1991 conviction for attempted robbery and

assault with a deadly weapon; (3) one point for a July 10, 1992 conviction for burglary; (4) two points for a December 3, 1992 conviction for burglary; (5) two points for a 1994 conviction for possession of a controlled substance; (6) three points for the aforementioned 1994 conviction for assault with a deadly weapon and residential burglary; (7) one point for a 1998 conviction for possession of less than one ounce of marijuana; (8) two points for a 2007 conviction for domestic assault; and (9) one point for a 2009 conviction for assault/domestic violence.

The PSR also added two criminal history points for "recency," pursuant to U.S.S.G. § 4A1.1(e), because Delgado-Hernandez committed the instant offense less than two years after release from imprisonment on a sentence counted under § 4A1.1(a) or (b), specifically, the 2007 domestic-assault offense. Thus, the PSR calculated 17 criminal history points, placing Delgado-Hernandez in criminal history category VI. Based on his total offense level of 21 and his criminal history category of VI, the PSR calculated a Guidelines range of 77 to 96 months' imprisonment.

Delgado-Hernandez filed a sentencing memorandum objecting to the PSR's calculation of his criminal history. He primarily objected to the PSR's use of July 29, 2001, as the date his instant offense commenced. He argued that the evidence could not support a finding that he entered the United States on July 29, 2001, or even on October 1, 2002—a date he admitted returning. Even if it could, he argued no evidence showed that he remained in the United States continuously from that date. Instead, he asserted that "the earliest point this Court can be assured that Mr. Delgado-Hernandez arrived and *remained continuously* in this country is January 7, 2010, upon his arrest in Lancaster County." Using this date, Delgado-Hernandez objected to the inclusion of nine criminal history points for six of his convictions in 1991, 1992, 1994, and 1998.[2] If correct, Delgado-Hernandez would have only had eight criminal

---

[2]Delgado-Hernandez did not object to the scoring of his 1994 conviction for assault with a deadly weapon and residential burglary.

history points, resulting in a criminal history category of IV and a Guidelines range of 57 to 71 months' imprisonment.

Delgado-Hernandez also argued for a downward departure to a sentencing range of 46 to 57 months' imprisonment. He maintained that this range would more accurately reflect his criminal history as category III. He also asserted that "a sentence of no more than 46 months [would be] sufficient but not greater than necessary to comply with the requirements of 18 U.S.C. § 3553(a)."

At the sentencing hearing on May 24, 2010, Delgado-Hernandez reiterated his sentencing memorandum's arguments. The government resisted his objections and presented two exhibits to show that Delgado-Hernandez's offense began, at the latest, on October 1, 2002. The government's first exhibit was an "Alien Interview Form" prepared by ICE on January 5, 2010. In the field for the date, place, and manner of Delgado-Hernandez's "last entry," the ICE officer wrote "10/1/2002, Unk location." The second exhibit was a DHS document entitled "Record of Deportable/Inadmissible Alien," prepared on January 11, 2010. This document also noted that the date, place, time, and manner of Delgado-Hernandez's "last entry" was "10/01/2002." The form further stated the following:

> Subject states to Immigration Enforcement Agent Carl Wisehart on 01/11/2010 that he is a citizen of Mexico and that he last entered the United States illegally by foot on 10/01/2002 at an unknown location.

The government represented that Delgado-Hernandez had provided the information in both documents to the immigration officers preparing them. Both immigration officers were present at the sentencing hearing to testify if needed, but Delgado-Hernandez did not object to the admission of the documents. Instead, he argued that the PSR only stated that he entered the United States "on or about" October 1, 2002, and he asserted that the government needed to prove the date with greater certainty.

-4-

The district court found that the date of Delgado-Hernandez's last entry was October 1, 2002, responding to the arguments by explaining:

> Well, as the lawyers know, we often use terminology such as on or about a certain date when individuals are charged with offenses because sometimes it's not possible to determine an exact date and time an offense occurred.
>
> * * *
>
> But, in determining the guidelines, I am going to give the defendant the benefit of the doubt by using the October 1, 2002, date. That is a date that he had provided to law enforcement.

Based on this finding, the court eliminated four criminal history points for Delgado-Hernandez's three convictions in August 1991, September 1991, and July 1992. Delgado-Hernandez's criminal history category nonetheless remained at VI based on 13 criminal history points. The court then calculated the applicable advisory Guidelines range as 77 to 96 months' imprisonment and denied Delgado-Hernandez's request for a downward departure.

After hearing Delgado-Hernandez's argument for a 46-month sentence, the court announced that it would impose a sentence of 77 months' imprisonment. The court explained that it had considered the factors listed in 18 U.S.C. § 3553(a), specifically noting Delgado-Hernandez's "serious criminal history," his "expression of remorse," and the need for general and specific deterrence.

## II. *Discussion*

On appeal, Delgado-Hernandez argues that the district court procedurally erred in calculating his criminal history under the Guidelines by erroneously finding the date his present offense commenced to be October 1, 2002. He also contends that the court imposed a substantively unreasonable sentence.

A. *Criminal History Calculation*

Delgado-Hernandez acknowledges that the offense of being "found" in the United States is a continuing offense that "'commences' with a surreptitious entry by the alien and 'is a continuing violation that is not complete until he is discovered by immigration authorities.'" Thus, he asserts, "[t]he time between entry and discovery is considered 'relevant conduct' for guideline purposes, but only if the defendant remains in the country the entire time." *See United States v. Alba-Esqueda*, 457 F.3d 859, 860 (8th Cir. 2006). Thus, if Delgado-Hernandez had left the United States sometime after October 1, 2002, and later reentered, there would be two separate offenses. Accordingly, Delgado-Hernandez asserts that the government needed to establish that he remained in the country continuously after his alleged October 1, 2002 entry. He maintains that the government presented no evidence to show his continuous presence. Likewise, he argues that the documents admitted at the sentencing hearing do not conclusively establish that he entered on October 1, 2002, because they "carr[y] the risk of a reporting error" and are not reliable. According to Delgado-Hernandez, "the earliest date this Court can be assured that [he] arrived and *remained continuously* is January 7, 2010," the date of his arrest for the present offense. Thus, he contends that the district court procedurally erred in scoring five criminal history points for his three convictions in 1992, 1994, and 1998.

In response, the government argues that the district court did not clearly err in finding that Delgado-Hernandez's present offense commenced on October 1, 2002. The government notes that the two documents admitted at the sentencing hearing—without objection from Delgado-Hernandez—both state that Delgado-Hernandez told immigration officers that his *last* entry into the United States was on October 1, 2002. The government further points out that Delgado-Hernandez presented no evidence to rebut these documents, nor did he ever allege that he had subsequently departed and reentered the United States. Moreover, the government contends that Delgado-Hernandez's statement, made during his allocution, that he had "been working over here for the last 15 years" supports a finding that "his last entry

into the United States occurred at the latest, on October 1, 2002." Based on this evidence, the government argues that the district court did not clearly err in finding that Delgado-Hernandez's instant offense began on October 1, 2002, and, therefore, did not procedurally err in using that date to calculate his criminal history points.

We review all sentences using "a deferential abuse-of-discretion standard." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quotations and citations omitted). "We 'must first ensure that the district court committed no significant procedural error,'" including "'failing to calculate (or improperly calculating) the Guidelines range.'" *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). In so doing, "[w]e review a district court's interpretation and application of the Guidelines de novo and its factual findings . . . for clear error." *United States v. Canania*, 532 F.3d 764, 770 (8th Cir. 2008) (quotation and citation omitted). "Findings will be reversed only if the entire record definitely and firmly establishes that a mistake has been made." *United States v. Anderson*, 618 F.3d 873, 879 (8th Cir. 2010).

U.S.S.G. § 4A1.2(e)(2) provides that, when calculating a defendant's criminal history score, "[a]ny other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted." Thus, the district court's factual finding of when a defendant "commenced" the instant offense becomes critical in calculating that defendant's criminal history. If Delgado-Hernandez's present offense commenced in 2010, as he contends, his 1992, 1994, and 1998 convictions would not be scored. If, as the government argues, the instant offense commenced on October 1, 2002, those convictions would be scored.

Our circuit has stated that an illegal reentry, in violation of 8 U.S.C. § 1326(a), "begin[s] on the date of reentry." *United States v. Sanchez-Briones*, 133 F. App'x 354 (8th Cir. 2005) (unpublished per curiam); *accord United States v. Diaz-Diaz*, 135 F.3d 572, 575 (8th Cir. 1998) (noting that the offense of being "found in" the United States

typically commences on the date of the illegal entry). Further, we have stated that the offense "is an ongoing offense that continues until a person is discovered by authorities." *Alba-Esqueda*, 457 F.3d at 860. For Guidelines purposes, Delgado-Hernandez's relevant conduct is calculated from the date he last reentered the country. Thus, he "was engaged in 'relevant conduct' the entire time he was in the United States until he was discovered." *Id.* "[T]he relevant conduct [for sentencing an offense under § 1326] should be limited to the reentry immediately preceding appellant being found in the United States: If appellant had previously entered and then left the country, he avoided prosecution for that distinct offense when he left." *United States v. Mendez-Cruz*, 329 F.3d 885, 889 (D.C. Cir. 2003); *cf. United States v. Ruelas-Arreguin*, 219 F.3d 1056, 1061 (9th Cir. 2000) (noting that the Ninth Circuit has previously "suggested that an alien can avoid being 'found in' the United States by departing after his illegal re-entry").

The rule advocated by Delgado-Hernandez is without authority, and we reject it. No case—in this or any other circuit—has held that the government must prove that the defendant has *never* left the United States and illegally returned in the interim. *Cf. United States v. Centeno-Villanueva*, 353 F. App'x 842, 844 (4th Cir. 2009) (unpublished per curiam) (rejecting defendant-appellant's suggestion that "he may have left the country" after the date of illegal entry found by the sentencing court and stating that "[h]is bare assertion of what may have occurred is insufficient to establish a 'definite and firm conviction' that the district court" clearly erred).

We conclude that the district court did not clearly err. The unrebutted evidence could reasonably support a finding that Delgado-Hernandez last reentered the United States on October 1, 2002, and that he remained in the United States until he was apprehended on January 7, 2010. The government introduced documents at the sentencing hearing—with no objection from Delgado-Hernandez—which showed that Delgado-Hernandez "last entered" the United States on October 1, 2002. Those documents were based on statements Delgado-Hernandez made to immigration

officials. Delgado-Hernandez never offered any evidence to cast doubt upon the accuracy of those documents, nor did he ever present evidence or testimony suggesting that he had, in fact, left the United States and illegally reentered sometime after October 1, 2002. Indeed, his admission to immigration officials that he "last entered" on October 1, 2002, is persuasive evidence that he did, in fact, continuously remain in the United States after that date. Based on the evidence before it, the district court did not clearly err in finding that Delgado-Hernandez's offense began on October 1, 2002. Thus, the court committed no procedural error in using that date to calculate his criminal history score.

## B. *Substantive Reasonableness*

Delgado-Hernandez next asserts that even if the district court did not procedurally err, it sentenced him to a substantively unreasonable term of imprisonment. He argues, as he did before the district court, that a sentence of 46 months would be "sufficient, but not greater than necessary" to comply with federal sentencing concerns. He maintains that the district court committed a "clear error of judgment" in weighing the sentencing factors under 18 U.S.C. § 3553(a). Hernandez-Delgado argues that each of the considerations in § 3553(a) support a lesser sentence. Among these arguments, he contends that he deserved a lesser sentence because he has assimilated into the culture of the United States, a fact that a recent proposed Guidelines amendment considers relevant when weighing the need for a departure. In addition, he asserts that the Guidelines sentence recommended in his case "lack[s] grounding in sound sentencing judgment" because it "double counts" by both increasing his offense level and adding criminal history points. Lastly, he contends that his criminal history score overstates the seriousness of his criminal history because most of his convictions were imposed more than 12 years ago, and the Sentencing Commission has recently voted to eliminate recency points (which were

added to Delgado-Hernandez's criminal history score).[3] Delgado-Hernandez asserts that all of these arguments demonstrate that "a sentence of 77 months' imprisonment is longer than necessary to serve the goals of 18 U.S.C. § 3553(a).

We review the substantive reasonableness of the district court's sentence "under an abuse-of-discretion standard." *Feemster*, 572 F.3d at 461 (quotation and citation omitted). In making this determination, we must "take into account the totality of the circumstances." *Id.* (quotation and citation omitted). If the sentence imposed is within the advisory Guidelines range, this court "may, but is not required to, apply a presumption of reasonableness." *Gall v. United States*, 552 U.S. 38, 51 (2007). In any case, appellate review for substantive reasonableness is "narrow and deferential." *Feemster*, 572 F.3d at 464 (quotation and citation omitted). "A sentence is substantively unreasonable if the district court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." *United States v. Lozoya*, 623 F.3d 624, 626 (8th Cir. 2010) (quotation and citation omitted).

The district court did not impose a substantively unreasonable sentence. The record reflects that the court considered all of the § 3553(a) factors and noted that Delgado-Hernandez's "serious criminal history" and the need for deterrence justified the sentence. In addition, the record shows that Delgado-Hernandez made the same arguments to the district court that he now makes on appeal. The court addressed some of these arguments, noting, for example, that although many of Delgado-Hernandez's convictions were "older than convictions we usually consider for purposes of counting points," his criminal history was nonetheless "serious." The court did not abuse its

---

[3]As Delgado-Hernandez points out in his brief, the Commission announced the elimination of recency points under U.S.S.G. § 4A1.1(e) on April 19, 2010. The amendment, however, did not become effective until November 1, 2010. Guidelines Amendment 742.

discretion merely by not discussing all of a defendant's arguments. *See United States v. Miles*, 499 F.3d 906, 909–10 (8th Cir. 2007) (finding that although the sentencing court did not discuss certain issues at the hearing, the fact that the parties argued those issues at the hearing demonstrate that the court properly considered those issues). Moreover, the court imposed a sentence at the bottom of the applicable Guidelines range. On this record, we presume Delgado-Hernandez's sentence to be reasonable. Delgado-Hernandez has not rebutted that presumption.

Finally, although the district court did not address them specifically, none of Delgado-Hernandez's other arguments demonstrate that the court committed a "clear error of judgment." First, his contention that the recommended Guidelines range involved impermissible double counting has been squarely rejected by this court. *United States v. Myers*, 598 F.3d 474, 476 (8th Cir. 2010) (rejecting the argument that impermissible double counting occurs when a prior conviction is used to increase both the offense level and the criminal history calculations because the Sentencing Commission intended the result and the two sections address different concerns). Second, the Guidelines amendments referenced by Delgado-Hernandez were not effective until November 1, 2010,[4] after the district court sentenced him and entered its judgment. Delgado-Hernandez "was not entitled to the benefit of a Guidelines amendment that was not in effect at his sentencing." *United States v. Brown*, 396 F. App'x 328, 329 (8th Cir. 2010) (unpublished per curiam). Accordingly, his arguments do not show an abuse of discretion.

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

---

[4]Guidelines Amendments 740 and 742.